JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Rayshawn Campbell, appeals his convictions and sentence in the common pleas court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm in part, reverse in part and remand for resentencing.
 {¶ 2} According to the record, appellant Campbell was originally indicted in Cuyahoga County Common Pleas Case No. CR-457842 on four counts of felonious assault, in violation of R.C. 2903.11. Each count included firearm and gang activity specifications. The case proceeded to a jury trial on January 11, 2005. The jury returned its verdict on January 14, 2005, finding appellant guilty of two of the felonious assault counts with firearm specifications. Appellant was found not guilty of the remaining counts as well as the gang activity specifications.
 {¶ 3} On January 20, 2004, the trial court sentenced appellant to one and three years of incarceration for the gun specifications on each count, which merged for the purpose of sentencing and ran concurrently. Appellant was sentenced to three years on each of the felonious assault convictions, to run consecutive to each other and consecutive to the sentence for the firearm specification. Appellant's aggregate sentence was nine years.
 {¶ 4} According to the facts, this case involves a shooting in the area of East 79 Street near East High School. The state called Marlon Johnson as its first witness. Johnson testified that he was an 18-year-old student attending Martin Luther King High School. On September 15, 2004, Johnson was walking home after school in the area of East 79 Street near East High School when he was shot. Johnson described the scene and said that it started as a fight. He stated that he recognized appellant as the man who was involved in a fight with another male on the day in question. There was a crowd of people hanging around during the fight.
 {¶ 5} The school security guards broke up the fight, and as observers were leaving the scene, gunshots rang out. Johnson and others quickly ran from the area. Johnson received a gunshot wound on his left ring finger and was transported by ambulance to University Hospitals for treatment.
 {¶ 6} Johnson further testified that another male, identified as James Goodwin, was shot in the left thigh. Johnson testified that he and James Goodwin were friends.
 {¶ 7} The state called Cardell Dawson as its second witness. Dawson testified that he was a 16-year-old student attending Martin Luther King High School. He stated that he was walking past East High School after school on September 15, 2004 and saw a fight break out on East 79 Street between two males unknown to him. Dawson observed the fight from his brother's house, which is in the direct vicinity of East High School.
 {¶ 8} Dawson identified appellant and testified that he was the shooter. He stated he heard five gunshots and was close enough to the appellant during the shooting to give a description of the gun that was used. He observed two males receive gunshot wounds and then saw appellant run to a car. Dawson identified the victims as Marlon Johnson and James Goodwin. Dawson specified that James Goodwin was shot in the thigh and Marlon Johnson was shot in the finger. Dawson also stated that he was reluctant to testify because he thought he would be in danger, but he appeared in court because he was subpoenaed.
 {¶ 9} Dawson testified that during the shooting there was another male at the scene who was firing a gun, and he identified that individual as Perez. Dawson witnessed Perez shoot a gun one time into the air. He testified that Perez did not cause the injuries to the victims.
 {¶ 10} Yulona Clay also testified. She worked as a supervisor for the investigation bureau for the Cleveland Municipal School District. She testified that she heard a radio report that there was a fight with shots fired in the area of East High School. Clay initially responded, but left when the situation appeared under control. However, she returned when she found out an officer needed assistance. When she returned, two security officers yelled out to her to apprehend a male who was fleeing the scene.
 {¶ 11} Clay and her partner exited the car. Clay observed the male with a weapon in the middle of his belt and ordered the male to lie on the ground with his hands visible; however, the male placed his hand on his weapon and then took off running. Clay identified the appellant as the male she saw with the weapon on the day of the shooting.
 {¶ 12} The third witness called by the state was Detective Thomas Lett. Detective Lett testified that he has been a member of the Cleveland Police Department for 20 years and has been a detective with the Fifth District since 2000. Detective Lett was assigned to investigate the shooting in question. He took a written statement from Dawson, which implicated appellant as the person who shot the two victims. He also interviewed James Goodwin, one of the victims, who also gave a written statement.
 {¶ 13} Eventually, appellant turned himself in to the Fifth District and gave a written statement to Detective Lett. Appellant's statement indicated that appellant went to East High School on September 15, 2004 to seek revenge on a person who had hit him on a prior day. Appellant stated that he fought the person he was looking for, but then gave up the fight and walked away. He claimed he heard gunshots, but denied shooting a gun or possessing a firearm. Detective Lett testified that during his investigation, he was able to exclude the individual known as Perez as a suspect in the shooting.
 {¶ 14} Appellant now appeals asserting three assignments of error for our review. Assignments of error I and II are substantially interrelated; therefore, for the sake of judicial economy, we will address them together.
 {¶ 15} "I. The evidence was insufficient to support a finding of guilt as to the charge of felonious assault because the evidence did not establish that appellant caused injury to James Goodwin."
 {¶ 16} "II. The felonious assault convictions were against the manifest weight of the evidence."
 {¶ 17} The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. With respect to sufficiency of the evidence, sufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 18} Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may, nevertheless, conclude that the judgment is against the weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. Id.
 {¶ 19} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Issa, 93 Ohio St.3d 49, 67, 2001-Ohio-1290; see, also, State v. Thompkins, supra.
 {¶ 20} The proper test to be used when addressing the issue of manifest weight of the evidence is set forth as follows:
 {¶ 21} "Here, the test [for manifest weight] is much broader. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [fact finder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. * * *" State v. Moore,
Cuyahoga App. No. 81876, 2003-Ohio-3526, at p. 8, quoting Statev. Martin (1983), 20 Ohio App.3d 172, 175; see, also, Tibbs v.Florida (1982), 457 U.S. 31.
 {¶ 22} The power to reverse a judgment of conviction as against the manifest weight must be exercised with caution and in only the rare case in which the evidence weighs heavily against the conviction. Moore at p. 8, citing Martin.
 {¶ 23} It is with the above standards in mind that we now address appellant's first and second assignments of error. There is nothing in the record demonstrating that the evidence in this case is anything but legally sufficient to support the jury verdict. Furthermore, there is nothing in the record suggesting that the trial court clearly lost its way and created a miscarriage of justice requiring reversal of appellant's conviction.
 {¶ 24} To the contrary, the evidence in the record demonstrates that the trial court acted properly. For example, there is sworn testimony in this case that appellant fired shots from a handgun. Eyewitness Cardell Dawson testified that he observed appellant shoot James Goodwin in the thigh. In addition, the medical records of James Goodwin were admitted into evidence and were reviewed by the lower court.
 {¶ 25} Contrary to appellant's assertions, the witnesses are credible. Although Cardell Dawson testified that he did not see appellant involved in the fight prior to the shooting, the testimony of Detective Lett shows that appellant admitted in his own statement to being involved in a physical altercation. Moreover, the testimony does not conflict with the identity of appellant, his presence at the scene, the names of the victims or their injuries. The state elicited credible testimony from eyewitness Cardell Dawson, demonstrating that Dawson had no motive to testify against appellant. In fact, Dawson was dissuaded by appellant's family regarding his testimony.
 {¶ 26} Based on the evidence presented at the trial, as well as the lower court's review of that evidence, we find appellant's first and second assignments of error to be without merit. The state did indeed present sufficient evidence to support appellant's convictions, and the convictions were not against the manifest weight of the evidence. Appellant's first and second assignments of error are therefore overruled.
 {¶ 27} "III. The trial court erred by ordering consecutive sentences when it failed to make all of the necessary findings required by R.C. 2929.14(E)(4), and failed to give adequate reasons for the findings it did not make."
 {¶ 28} Appellant argues that the trial court erred by ordering consecutive sentences when it failed to make all of the necessary findings required by statute. We find merit in this argument.
 {¶ 29} R.C. 2929.14(E)(4) states the following:
 {¶ 30} "(E)(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 {¶ 31} "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 {¶ 32} "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
 {¶ 33} "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
 {¶ 34} Pursuant to R.C. 2929.14(E)(4), a trial court is required to make at least three findings prior to sentencing an offender to consecutive sentences. Likewise, pursuant to R.C.2929.19(B)(2)(c), the trial court must give its reasons behind its findings and make a record at the sentencing hearing that confirms that the trial court's decision-making process included all of the statutorily required sentencing considerations. The trial court need not use the exact words of the statute; however, it must be clear from the record that the trial court made the required findings. State v. Armstrong, Cuyahoga App. No. 81928,2003-Ohio-5932.
 {¶ 35} As a general rule, "a sentence of imprisonment shall be served concurrently with any other sentence." R.C. 2941.41(A). A sentencing court has the discretion, however, to impose consecutive punishments if, and only if, it sets forth statutorily required findings and reasons in support thereof. R.C. 2929.19(B)(1)(2)(c). See, State v. Grider (Feb. 2, 2000), Cuyahoga App. No. 75720; State v. Edmonson (1999),86 Ohio St.3d 324.
 {¶ 36} The record in the case at bar demonstrates that the lower court failed to make the necessary findings and failed to set forth facts supporting the consecutive sentence. The trial court neglected to explain why consecutive sentences of six years were necessary to protect the public or to punish appellant. For example, no analysis was provided as to why concurrent terms of imprisonment could not have adequately rehabilitated appellant, who had never before served a prison term. Nor did the court's assertion that appellant lacked remorse support the court's finding that he posed a danger to the public. The trial court did make an adequate finding that appellant had been adjudicated a delinquent. Nevertheless, the trial court did not fulfill its duty to provide its findings and reasons for each of the factors mandated by R.C. 2929.19(B)(2)(c). Accord, Grider andEdmonson.
 {¶ 37} Appellant's third assignment of error is sustained, and this matter is remanded for resentencing.
Judgment affirmed in part, reversed in part and remanded.
This cause is affirmed in part, reversed in part and remanded to the lower court for further proceedings consistent with this opinion.
It is ordered that appellant and appellee share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Kilbane, J., concur.